Good morning, Your Honors. My name is Aaron Morrison. May it please the Court, I'd like to reserve five minutes of my time for rebuttal. This case involves an agency denial of petitioner's request for protection under the Torture Convention. Our primary argument in regards to the Kat claim is that the agency failed to consider all relevant evidence with respect to the possibility of future torture. In particular, the immigration judge concluded that in assessing whether petitioner met his burden, she could not consider or rather she could only consider whether petitioner himself suffered past torture. And that is at AR 62. Quote, the court is limited to considering the past torture of the respondent. But that statement is made following identifying a particular subject, which is the finding the court does not find that he suffered past torture in Ethiopia. And I think it's true whether he suffered past torture turns on what happened to him. I don't read from that statement that the court thereafter doesn't consider at all for any other purpose that it's not going to pay any attention to evidence of past torture suffered by others. Look literally at the sentence you said. The court is limited to assessing evidence of past torture suffered by respondent. It doesn't say it's going to disregard other things for other questions, but on the question of whether your client, respondent there, petitioner here, suffered past torture, that's what the evidence should be focused on. Well, I understand what the point you're making, Your Honor, but I think that's kind of an odd way for the immigration judge to it's an odd statement. I mean, it seems self evident that in concluding whether or not the petitioner himself suffered past torture, she could only consider whether he himself suffered past torture. It's just very, that's a very, in my opinion, that's a very odd way to put it. Maybe I've read too many oral decisions of immigration judges, because we frequently see odd phraseology. But the point seems to be very clearly, it's under the subject of he suffered past torture in Ethiopia as the issue, and goes on to say, additionally, respondent failed to show that he would be subject to a particularized threat of future torture if he returns to Ethiopia. And nothing there contains a statement is that all I'm going to consider is to whether he suffered past torture, or that I'm not going to consider evidence regarding other family members. So I'm not sure that putting as much weight on that phrase that your of what the IJ said. Whatever, go ahead, answer that question. Sure. I mean, the only thing I can say is, I mean, I, I accept the immigration judges language as she set it forth in her decision. And that is, I am limited to considering the past torture of the respondent. And I think, I understand, Your Honor's way that, that, that you're reading this, Your Honor, but I just, I think that's just, it's a, that's a, that's an odd way of, of setting forth the decision. She didn't say that this was going to be that this was, she didn't analyze it as the board characterized it as, this is just one factor I'm looking at. He didn't meet, he didn't, he didn't satisfy past torture. Let's move on to the other factors. She said, I am limited to considering past torture of the respondent. And in our view, that's a ruinous, I'm sorry. After identifying the subject of past torture. Additionally, she moves on to the next subject, which is well-founded fear of future torture. That's a different subject. Doesn't say she's not going to consider evidence for that. Right. What is the evidence that he suffered, that he suffered past torture? So he didn't suffer past torture. And we're not making that, we're not making an argument otherwise. Our argument is, is, is that she didn't consider other relevant factors on the issue of future torture. Primarily, she, she didn't give correct or sufficient weight to his his family suffered, the harm that they suffered in his country. And when you look at that, combined with her statement that she could only consider past torture of the respondent, we believe that that, that was not a sufficient, legally erroneous analysis. So what do you point, what do you point to as evidence that should have compelled the conclusion that he was at such risk? Well, his credible testimony that three of his aunts and uncles were detained and beaten and tortured by state authorities, that they were forced to walk from Ethiopia to Eritrea, that his godfather was disappeared. The stepfather also gave similar testimony that he and his family were, were, were forced to leave. And when did all that take place? That took place in 1998. Circumstances seem to have changed since then. They have. I, I, I, and I acknowledge that. And I guess what we're primarily requesting of the court is, you know, the, the board, the agency didn't give sufficient consideration to this evidence. And at a minimum, a remand would be necessary for them to properly weigh this evidence. Well, but you say this evidence, but the underlying question is whether the evidence compelled the conclusion that you say that the agency should have The IJ did say, as they commonly do, that she carefully considered all of the evidence, the testimony, the documentary exhibits. And we have lots of case law that says they're not required to recite each and talk about each piece of evidence. So the question becomes, okay, you're saying there was evidence there that should have produced a different conclusion. What evidence? I'm not saying that, and the IJ didn't say that there's no evidence that was offered on behalf of your client. But I think for us to be able to say that, yes, there's potentially a due process violation, we need to have identified what evidence would have swung the balance. What evidence would have compelled the agency to reach the conclusion you seek? Right. So, and I agree, they don't, the agency doesn't have to recite every single piece of evidence. But if there's an indication that they didn't consider evidence, then that catch all phrase is not enough to say. So let's go back to that question. Is there any anything in the decision that supports the proposition that they didn't consider evidence other than the sentence we've already beaten to death? Yes. The, at AR-57, the immigration judge erred in concluding that petitioner did not present any evidence on the issue as to whether Ethiopia would recognize him as a citizen. That's at AR-57. However, the petitioner did submit a copy of the Ethiopian Immigration Act, which states that citizenship is derived from one's parents. And that is at AR-849. And that contradicts the board's decision that AR-5, where it says, where they mischaracterize our argument. And they say the respondent, that is the petitioner, contends that the immigration judge did not adequately consider that the government would not view him as an Ethiopian citizen. It's not that she didn't adequately consider. She didn't look at the evidence. She said that we didn't submit any evidence on that issue. And we submitted a copy of the law that governed citizenship in Ethiopia. And that's critical as to whether or not they would view him, they would accept him as a citizen. And that's bound up with our argument that he would face harm as a result of his Eritrean heritage. So let me let me pause on that, too, because I confess I've read some about the difficulties and the Civil War and so forth. But he was born in Ethiopia, right? He was. And at least one of his parents was born in Ethiopia. His mother was, that's correct. And when he entered this country and when the rest of the family entered this country, they identified themselves as having what we call a native and citizen of Ethiopia. When his parents entered, yes, when the petitioner entered in 2002, I believe. He arrived as a refugee from Germany. And the I-94 that was submitted does identify him as Ethiopian. Again, that's over 20 years ago. Well, but so so the question is, I mean, there's a statement that you're focusing on did not submit evidence stating that Eritrean heritage in Ethiopia are not considered subjects, nationals or citizens despite being born in Ethiopia. That seems to be true because what you submitted talked about how you determine somebody with Eritrean, if I'm pronouncing that correctly, heritage, but it doesn't speak to the other part, which is that he was born in Ethiopia. He had a family where the mother was born in Ethiopia. And so I don't know where there was evidence that suggested somebody in that situation wouldn't be recognized by Ethiopia as a citizen. So what's literally false about the statement? So the law that we submitted, the copy of the act that we submitted at AR 849 indicates that citizenship is derived from one's parents. It's not necessarily derived from, you know, being born in the country. So the respondents. His parent, his mother was born in Ethiopia and identified as having Ethiopian citizenship. So that's correct. I'm guessing that his father was born in Eritrea and that. But the page of the record you pointed us to says both or or either of his parents, so. Right. I mean, I agree that it's that it's not necessarily 100 percent clear from looking at it, but it was something that should have been considered by the by the immigration judge. And I don't think it's something that. Well, how do we know it wasn't? I mean, you're you're objecting to the interpretation given, but that doesn't say it wasn't considered. I mean, I think it's a big leap to say that there's a violation because the IJ didn't consider something simply because she didn't come up with a conclusion that you preferred and a conclusion that isn't driven very strongly by that document. Well, that's not it's not that she didn't just reach the conclusion that we wanted. She says that we that he did not present any evidence on the issue as to whether Ethiopia would recognize him as a citizen. That is incorrect. We presented the Immigration Act. Now, I understand if the court thinks that that was insufficient to establish that that he would not derive citizenship from his parents. But to say that we didn't submit any evidence at all is just what are you trying to accomplish with this argument? I don't know what you want. A different desert. You're looking for a different designation or what's the basis that you're trying. You know, what are you trying to get at with this argument? It it's relevant to whether or not we believe that it's relevant on the issue as to whether he would suffer harm in light of his Eritrean heritage and whether or not the government would view him as a citizen. I believe is relevant for that. So you're not seeking it. You're not seeking a different designation of country of return. I mean, we're arguing. I mean, we'll just tell you, aren't you? I mean, if it goes if it were to you know, let's say you were really successful here and you get to go back. Are you going to ask for a different country of removal? I think to make the argument to be consistent with what we're arguing on the torture claim, we would have to. Yes. And what country of removal would you ask for? Well, we wouldn't decline. We would decline to designate because. Well, then you're back. Then it's just a big circle. I mean, I don't I don't necessarily do it that way, but I understand. I understand the way it looks, but. Well, I'm interested in this because much of the argument you've made and again, it ties back into a alleged due process violation is that you weren't given proper notice by the second or the IJ at the subsequent hearing. About revisiting the country of removal question, and I'm just kind of lost there because, for one thing, the first IJ said Ethiopia with an alternative Eritrea and the second IJ said Ethiopia and dropped the alternative. And you're busy telling us how horrible things would be for him for Eritrea. I'm kind of lost because the whole argument that you should have been given better notice that they were going to reopen the country of elected not to. But the argument seems to say, oh, no, I'm entitled to Eritrea where my cat argument says I'm at great risk. I just circle is is a polite way to describe this. You got me coming and going. If you want to tell us now that, oh, no, he wants to go to Eritrea. It really doesn't change things because he doesn't want to go to Eritrea. And so I'm lost on the whole argument that he wasn't properly treated or heard or given notice about the country of removal issue. I guess I understand how it could seem that way, but the primary argument is for arguing against his Ethiopian citizenship is really more relevant to his claim of future harm. OK. All right. Over my time, I guess we'll I'll give you a minute or two to for reply. Thank you. Let's hear from the government. May it please the court. My name is Nancy Safabi and I represent the respondent in this case. Here, petitioner does not qualify for deferral of removal pursuant to the Convention against Torture and substantial evidence supports the agency's decision. Minutes ago, you heard petitioners counsel say that they are not arguing that petitioner suffered past torture or harm in Ethiopia and that should alone foreclose his claim for deferral of removal pursuant to CAT. Here, the agency relied on this court's president in Hussein that an individual who wants to qualify for protection under the Convention against Torture needs to show that he has particularized threat of future torture. And here throughout the record, you see that he cannot do so. He relies on country conditions reports for basic generalized violence, but does not show how any of it is connected or directly going to affect him, especially where members of his family have traveled back to Ethiopia and faced no harm. He has identified as evidence that he thinks should have been considered and wasn't mistreatment of members of his family, 1998, I think was the year, but at some point in the past. And we have recognized claims under CAT where the individual, what we call petitioner in your cause, respondent, but the person who is seeking recognition here, has escaped unharmed, but the rest of his family has been shot and killed, for example. And he has reasons to demonstrate that whatever it was that made the authorities go after his relatives would make them go after him, too. So the fact that he did not himself suffer past torture doesn't by itself exclude the possibility of being eligible for relief under CAT. Yes, Your Honor. Consistent with this court's precedent, though, the agency must weigh probative evidence to show future torture. And you'll see in the agency's decision that the board does note those facts and decides that because they were so long ago and ties between Eritrea and Ethiopia have since normalized, and there are diplomatic relations now and commercial flights to and from the airports are ongoing, that it's not more likely than not that he faces a fear of future torture. So to answer your question, the agency did consider that evidence and it noted it in its opinion. Could I ask you on the other issue? Is it sort of common practice or at least something that IJs, you know, do, I don't know, I guess on an individualized basis to designate an alternative country of removal as the initial IJ did here? Your Honor, based on my experience, I believe an IJ can do that. I don't have personal experience litigating cases like that. How would it kick in? I mean, would it, I don't know, are you familiar with how that process works in terms of I know you have to get a, I guess, a visa or permission from the government? Because in the past we had cases involving people that couldn't get removed to Vietnam, for example. So is the alternative designation meant to be the first backup in case door number one is locked and you can't get through it, then the backup alternative number two is identified here as Eritrea? Is that what this was meant to do? That was what that was meant to do and that was done by the original IJ in the Los Angeles court. However, when the case changed venues to the new IJ, the hearing was set for the Convention Against Torture claim. And so during that hearing, petitioner changed his claim, as I understand it, and so evidence was presented and heard. And so after the second immigration judge heard all of the evidence and the new claim that was being made, which was originally before the Los Angeles immigration judge, petitioner's claim was that both of his parents were Eritrean and therefore Ethiopia wouldn't recognize him as a citizen. And when he went to the second immigration judge, when venue got transferred, the claim became he was going to not be recognized as an Ethiopian citizen based on his biological father's Eritrean heritage. And so evidence was heard throughout that CAT hearing and then the immigration determined, based on all of the evidence that was heard at that point and petitioner still continued to refuse to designate a country himself, that that alternate country of Eritrea couldn't be designated because there was no evidence that he was a citizen of Eritrea or that the country would accept him. So the second IJ is basically concluding that the alternative designation didn't fit the priority that's set forth in the statute, so the door number two would be locked anyway. What happens to him if Ethiopia, for whatever reason, would decide not to issue the papers that would permit him to re-enter Ethiopia to be removed to Ethiopia? What would happen then? In that hypothetical scenario, Your Honor, my understanding is that ICE has a process for designating which countries could accept him if Ethiopia refuses and then petitioner would go through that process. Isn't that the, that's the issue or the issues that JAMA decided? How that works? Yes. And it would be the fourth factor where it states that there would be a list of countries where governments would accept someone who could not be removed to the initial country or an alternate country. I mean, it is possible, I guess, in that scenario that Eritrea could be an alternative country in that event if the doors to Ethiopia were closed? Or would he become stateless, so to speak? He might become stateless in that instance, simply because he hasn't, well, one, his argument is that he would be, at hearing he testified that the government would be after him too in Eritrea, so he would not want to designate Eritrea either. And as I understand what he said earlier today, what counsel said earlier today at oral argument is he would still decline to designate a country. So I guess, yes, in that circumstance, if you're not going to designate Ethiopia or Eritrea, and then the government is designating Ethiopia and you can't be removed there, he would be stateless. I see. Yeah. Okay. Hypothetically, of course. Right. Right. Right. If there are no further questions from the court, the respondent would rest on its brief. Okay. Thank you, counsel. All right. We'll hear a minute of rebuttal.  So, yeah, just to make clear, we're not, the respondent is not requesting Eritrea as a country of removal. So if you're not, then what is the whole argument that you weren't given proper notice by the IJ, the second IJ, to revisit that issue? Because you don't want what it was that was taken away. Our, the primary, the reason why that's relevant goes back to his fear of future harm as far as the way Ethiopia would view him. And I think if I didn't, we don't want to be in a situation where we somehow consent or agree that he's an Ethiopian national or citizen. Right. But I guess essentially, are you just conceding there's no prejudice from the second IJ's decision to take Eritrea off the designation? It's, the prejudice isn't so much that Eritrea was taken off the designation. The prejudice is that in making this analysis, the immigration judge said we did not submit any evidence on the issue of whether Ethiopia would see him as a citizen. Let me be clear in separating the arguments. I mean, we understand that's part of the argument that you've made under CAT, that evidence should have been considered that wasn't or should have been considered differently. But you have an alternative argument. I think it's identified as C in your opening brief, that the agency erred by not adhering to the law of the case doctrine when the second hearing resulted in the dropping of Eritrea as an alternative place of removal. And you don't, your client doesn't want to go to Eritrea. So I think Judge Thomas's focused question was, if that didn't cause him harm, there's no prejudice from that, then is there anything left to the law of the case argument that you've made? Not that you've withdrawn the CAT argument, but the law of the case argument doesn't seem to match your main argument. Yeah, the law of the case argument, we're primarily looking at it from a due process standpoint. I know we did cite to that memo that support for the argument, and that could have been crafted a little bit more clearly. But the primary argument is the due process argument in that she revisited this issue without giving us a chance to be heard on it. And I didn't want to be in a situation where we're making this argument in the context of CAT regarding his, whether or not he's an Ethiopian citizen. And the government turns around and objects and says, well, the petitioner didn't contest that fact when designating the country. Okay. Okay, counsel, I think we understand your argument. So with that, thank you both for your arguments this morning. We appreciate your arguments, and the matter will be submitted at this time. And that ends our session for today. Thank you.
judges: PAEZ, CLIFTON, THOMAS